

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

December 23, 1957

Honorable John H. Winters  
Commissioner, State Depart-  
   ment of Public Welfare  
Austin, Texas

Opinion No. WW-330

Re: The effect of the Texas  
   Mental Health Code (House  
   Bill No. 6, Acts of the  
   55th Legislature, Regular  
   Session, 1957, Chapter 243,  
   page 505) upon the eligi-  
   bility for Old Age Assist-  
   ance, Aid to the Blind, and  
   Aid to the Permanently and  
   Totally Disabled recipients  
   on furlough from the State  
   Hospitals for the mentally  

Dear Sir:

   ill, and related questions.

      You have requested an opinion concerning the effect of the Texas Mental Health Code (House Bill No. 6, Acts of the 55th Legislature, Regular Session, 1957, Chapter 243, page 505) upon the eligibility for Old Age Assistance, Aid to the Blind, and Aid to the Permanently and Totally Disabled recipients on furlough from the State Hospitals for the mentally ill. In as much as your request involves numerous questions, which are set forth in the body of your request, we shall not attempt to enumerate them but rather shall answer them in setting forth the context in which they appear.

      Your first questions deal with an interpretation of Section 79 of House Bill No. 6, Acts of the 55th Legislature, Regular Session, 1957, Chapter 243, page 505 (Texas Mental Health Code), which provides:

      "Sec. 79.  Furlough of Patient

      "The head of a mental hospital may, after examination, furlough an improved patient and may at any time, by order, re-hospitalize a furloughed patient, provided, that the patient's mental condition warrants re-hospitalization. A patient on furlough remains subject to the orders of the head of the hospital."

      You have posed the following questions in connection with this section:

>"Do you interpret the 'by order' to mean the order of the head of the hospital or does this refer to the order of the committing court?  It appears to us that it probably has reference to the head of the hospital and the last sentence which reads, 'A patient on furlough remains subject to the orders of the head of the hospital.' gives credence to this interpretation.  Does this last sentence mean that the head of the hospital has control of all patients on furlough from mental institutions to such an extent that he can recall the patient to the State hospital and that he can designate the place of residence of the patient while on furlough and retain general supervision of the patient?"

We are of the opinion that the phrase "by order" means the order of the head of the hospital to which the patient is committed.  Furthermore, it is our opinion that the phrase "a patient on furlough remains subject to the orders of the head of the hospital", when construed along with the other provisions of Section 79, means that the head of the hospital has control of all patients on furlough from that hospital to such an extent that he can recall a patient to the hospital and that he may prescribe such treatment as will help or guide the patient toward his ultimate recovery from the mental condition with which he is afflicted.  Section 79 provides the means whereby the head of the hospital involved might allow an improved patient to leave the hospital and continue his recovery under more normal conditions.  The section does not in any way envision the discharge of the patient, for this procedure is specifically provided for in Section 80 of the Act, and it follows, we believe, that short of discharge, the patient must of necessity remain subject to a certain amount of the supervision and control by the head of the hospital in as much as, even though he be on furlough, the patient is undergoing a phase of treatment directed toward his ultimate recovery.

Both State and Federal law provide that assistance to the aged, blind and permanently disabled shall not be paid to an individual who is an inmate of a public institution.  Section 51a of Article III of the Constitution of Texas; House Bill 611, Acts of the 47th Legislature, Regular Session, 1941, Chapter 562, page 914, (Public Welfare Act); 42 U.S.C., Section 306, Section 1206, Section 1355 (Federal Social Security Act).

You have requested that we examine the prohibition set forth in these provisions of the State and Federal Law in the light of the construction which we have placed on Section 79 of the Texas Mental Health Code above.

The purpose of the prohibition is, of course, to preclude the possibility that an individual might be able to receive assistance payments and at the same time be an inmate of a public institution, and as such simultaneously receive maintenance from this second source. As we construe Section 79 of the Texas Mental Health Code, this situation could not arise, for even though the patient be subject to recall by the head of the hospital, he would not be receiving the maintenance which he would otherwise be getting if confined to a state hospital, and even though his recovery be subject to a certain amount of supervision by the head of the hospital from which he was furloughed, he would in all respects be undergoing treatment as an "out-patient", and, therefore, such person would not be an "inmate of a public institution," and he would not be denied the upkeep which he otherwise would be receiving from the State. For this reason, we do not believe that a patient furloughed under the provisions of Section 79 of the Texas Mental Health Code would be ineligible to receive assistance payments under the laws of the State of Texas.

Section 51a of Article III, Constitution of Texas, also provides that the amount of assistance paid out of State funds to each person assisted shall never exceed the amount so expended out of Federal funds. We must, therefore, examine the interpretation placed on the term "inmate" by the Federal authorities to see if that term as they define it is in any way affected by the construction which we have placed on Section 79 of the Texas Mental Health Code.

The United States Department of Health, Education and Welfare has construed the term "inmate" in the Handbook of Public Assistance Administration, Part IV-3521.3, Section d of which provides:

> "d. A person on conditional release--
> for example, 'on parole,' 'on trial visit,'
> from a public mental hospital where he was
> an inmate--is not an inmate of a public
> institution if he is free of controls by the
> hospital, other than professional help or
> guidance relating to his mental condition."

This definition has been further construed by a letter of the Regional Office of the Department of Health, Education and Welfare, which states:

"In our opinion, an individual who was legally committed to a State mental hospital and later released, but whose person remains under the control of such hospital, must be considered as an 'inmate' of such 'public institution.'  We refer you to Handbook of Public Assistance Administration, Part IV-3521.3, Inmate, d, . . ."

The handbook definition referred to in the above letter specifically provides that a person "on parole" or "on trial visit" from a public mental health institution is not an inmate if he is free of controls by the hospital other than professional health or guidance relating to his mental condition.

We believe that the "control" that may be effected by the head of the hospital under our construction of Section 79, Mental Health Code, is in complete accord with the definition of "inmate" as made by the Federal authorities, and for this reason, we believe that a patient on furlough from a State mental hospital is not an inmate of a public institution, and is, therefore, eligible for assistance during this period.

Your second series of questions deals with certain problems involving guardianship which have arisen from your interpretation of the provisions of the Texas Mental Health Code.  Your first question provides:

"Is there any provision in the Law for the Court to find a person to be an 'incompetent person' so that general guardianship may be established for that individual without that individual having to be committed to one of the State hospitals for the mentally ill?"

Section 84 of the Texas Mental Health Code provides:

"Sec. 84.  No Effect on Guardianship

"No action taken or determination made under this Code and no provision of this Code

> shall affect any guardianship established
> in accordance with law."

We believe that this Section clearly indicates that the provisions of the Code are to be considered as separate and apart from, and in no way as controlling upon, any guardianship established, or to be established, in accordance with the laws of Texas. In other words, we believe that it was the intent of the Legislature that the Texas Mental Health Code should exist as a special procedure for providing for the treatment of the mentally ill above and beyond the existing law and should in no way limit those areas of our law not specifically encompassed within its provisions. This being so, we are of the opinion that the remedies which presently exist under the Texas Probate Code for the finding of incompetency are still applicable and provide the means whereby a general guardianship may be established for an individual without that person being committed to one of the State hospitals for the mentally ill. The views expressed in Attorney General's Opinion No. WW-18 (1957) would of course be applicable in such a case.

After setting forth the fact that many of the recipients of assistance are senile or mentally deficient and that Section 5 of the Code specifically exempts "senility" and "mental deficiency" from the definition of "mental illness", you state:

> "In order to make assistance payments
> on behalf of these persons a general guard-
> ianship must be established. Is there any
> provision in the statute for a court finding
> of 'incompetency' which could be used as the
> basis for a general guardianship for persons
> incapable of handling their own affairs due
> either to 'senility' or 'mental deficiency'?"

It is our opinion that the statute (Texas Mental Health Code) does not contain any provision which would allow a court finding of "incompetency" which could be used as the basis for a general guardianship for persons incapable of handling their own affairs due either to "senility" or "mental deficiency"; but that the provisions of the Texas Probate Code would be available in order for such a guardianship to be established.

Your request next sets forth certain portions of Sections 81, 83 and 84 of the Texas Mental Health Code, and you make the following request concerning them:

> "We will appreciate your interpretation
> of these three Sections of the Code in rela-
> tion to the problems of the recipients of
> public assistance who are unable, because of
> their mental condition, to receive and expend
> their assistance grants."

As stated in our answer to your first question, we are of the opinion that Section 84 establishes the fact that the Mental Health Code is to be considered as separate and apart from any guardianship established otherwise by law. Therefore, when Sections 81(b) and 83 of the Code use the term "mental incompetency", they refer to the finding of incompetency which may or may not be found under the provisions of Section 51 of the Code, and have no bearing whatsoever, upon any finding of incompetency which might have been found, or might in the future be found, under the provisions of the Texas Probate Code.

Your next question is encompassed in the following statement:

> "In Section 81 it is stated that the
> discharge of a patient from the hospital
> terminates the presumption that he is
> mentally incompetent; however, under Sec-
> tion 83 it is stated that the judicial
> determination that a person is 'mentally
> incompetent' creates a presumption that
> the mental incompetency continues until
> the person is discharged from the hospital
> or is redetermined by a court. Under what
> circumstances would a judicial redetermina-
> tion of his mental competency be required,
> and what is the status of the person who
> has been judicially determined mentally
> incompetent but who was not committed to
> a State hospital?"

The phrase "redetermination by a court" as it is used in Section 83(a) of the Code, we believe refers to the redetermination which may be required under the provisions of Section 82 of the Code. The circumstances under which a judicial redetermination would be required are set forth in Section 82(a), which provides:

> "Sec. 82.   Re-examination--Hearing--
>                      Discharge
>
> "(a)   Any patient, or his next friend on
> his behalf and with his consent, may petition

the county judge of the county in which
the patient is hospitalized for re-exami-
nation and hearing to determine whether
the patient requires continued hospitali-
zation as a mentally ill person."

The status of a person under the Texas Probate Code who has
been judicially determined mentally incompetent, but who was
not committed to a State hospital, would in no way be affected
by this determination.

Your next question is as follows:

"It has been the practice of this Depart-
ment for many years to require an Order of
Restoration of Sanity when it is shown that
the recipient had been declared by a Court to
be 'mentally incompetent' or of unsound mind.
Do these Sections 81 and 83 mean that when a
person who has been declared to be 'mentally
incompetent' by a court and is dishcarged
from the State hospital considered to be
capable from a legal standpoint or handling
his own affairs and receiving his assistance
grant in his own name?"

If the only determination of competency has been under
the provisions of the Texas Mental Health Code, then the patients
discharge would terminate the presumption of incompetency. If on
the other hand the question has been determined in proceedings
other than under the provisions of the Code, then the discharge
will have no effect whatsoever upon that determination.

Your next question is as follows:

"Presumably some patients will be dis-
charged from the State hospital as being no
longer in need of hospitalization but who are
incapable of taking the responsibility for making
their own application for assistance and expending
their assistance grants; and, therefore, the De-
partment will require the appointment of a guardian.
How will the court set up a general guardianship if
by being discharged from the mental hospital the
presumption of 'mental incompetency' is terminated?"

In accord with our answer above, we are of the opinion
that Section 84 of the Code specifically provides for such a

situation and that a guardian may be appointed under the provisions of the Texas Probate Code.

The next question is as follows:

"If it is obvious to the Department that the person is not capable of handling his own check but the patient has been discharged from the hospital, under what circumstances could the Department require the appointment of a general guardianship or require a redetermination of the person's mental incompetency by a court?"

The presence of any circumstances which would have led your Department to require the appointment of a general guardianship prior to the effective date of the Texas Mental Health Code would warrant such a requirement after the discharge of the patient under the provisions of the Mental Health Code.

Your next question is as follows:

"Is there any provision in the Code for judicially determining that a person is mentally incompetent or of unsound mind unless the determination is made in connection with an application for admission to one of the State mental hospitals?"

We have been unable to find any such a provision in the Code.

Your next question is as follows:

"What does Section 84 mean in relation to the general guardianships which are required for recipients of assistance as discussed in Attorney General's Opinion No. WW-18?"

We interpret Section 84 to mean that the provisions of the Texas Mental Health Code have no effect on the general guardianships which are required for recipients under the reasoning of Attorney General's Opinion No. WW-18 (1957).

Your next question is as follows:

"Is it your interpretation of the Code that the same procedure for the establishment of guardianship or mental competency would be    followed in those cases where the adjudication of incompetency had been made prior to the effective date of the Code and those wherein all proceedings were

had subsequent to the effective date of the Code?"

We answer this question in the affirmative.

Your next question is as follows:

"In other words, if the head of the State mental hospital should discharge after January 1, 1958 those persons who are now on furlough and who are receiving assistance through general guardianships, would the discharge of those persons have the effect of restoration of competency or termination of 'mental incompetency'?"

We answer this question in the negative.

Your next question is as follows:

"If so, then upon what basis would or could the guardianship which has already been established and which, in our opinion, is a prerequisite to their receiving assistance likewise terminate?"

Our answer to the preceding question makes it unnecessary for us to answer this question.

Your next question is as follows:

"If not, upon what basis would it be continued if the individual is no longer considered 'mentally incompetent'?"

Any guardianship which was established under the law, outside of those contained in the Texas Mental Health Code, would continue under the provisions of the Probate Code pursuant to which it was established.

Your final question is as follows:

"Would the decision be the same in relation to those whose 'mental incompetency' was adjudicated prior to the effective date of this Act as well as to those whose mental incompetency was adjudicated subsequent to the effective date of this Act?"

We answer this question in the affirmative.

## S U M M A R Y

A patient on furlough, under the provisions of House Bill No. 6, Acts 55th Legislature, Regular Session, 1957, Chapter 243, page 505 (Texas Mental Health Code), remains under the control of the head of the hospital to which committed to such an extent that he can recall the patient to the State Hospital and that he may prescribe such treatment as will help or guide the patient toward his ultimate recovery from the mental condition with which he is afflicted.  Any declaration of incompetency or presumption of competency made pursuant to or arising out of the provisions of House Bill No. 6, Acts 55th Legislature, Regular Session, 1957, Chapter 243, page 505 (Texas Mental Health Code), has no effect whatsoever on any guardianship established under the provisions of the Texas Probate Code.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Wayland C. Rivers, Jr.
Assistant

WCR:zt

APPROVED:

OPINION COMMITTEE
Geo. P. Blackburn, Chairman
B. H. Timmins, Jr.
Fred Werkenthin
John H. Minton, Jr.

REVIEWED FOR THE ATTORNEY GENERAL
BY:  James N. Ludlum